[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a civil action in which the plaintiff seeks judicial review pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15 of a final order of the defendant, the Director of the Department of Environmental Management (hereinafter generally "the Director"), issued on August 23, 1993. Administrative proceedings in this matter commenced on March 27, 1990, when the Department of Environmental Management (hereinafter simply "DEM") issued a compliance order to the plaintiff. In another proceeding in Washington County this Court held that that order should be deemed a notice of violation under G.L. 1956 (1993 Reenactment)§ 42-17.1-2(u), pursuant to which a request for hearing had been timely requested. After hearings in May, June and July of 1991, the administrative hearing officer issued a decision and order on July 7, 1993. She found that DEM had proved that the plaintiff was liable for soil contamination, but had not proved that it was liable for groundwater contamination. On August 13, 1993 the Director reversed the hearing officer's finding with respect to groundwater contamination, but affirmed the rest of the decision. On August 23, 1993 the plaintiff was ordered to complete both soil and groundwater remediation. This action was commenced on September 27, 1993. The record was certified on March 23, 1993. Briefing was concluded on April 22, 1994. The case was assigned to this Justice for decision on May 24, 1994.
The hearing officer found that the evidence presented at the hearing proved the following facts. An underground storage tank (UST) facility was located at a site owned by the plaintiff at the time DEM's regulations pertaining to UST facilities became effective in 1985. On April 14, 1989 DEM learned that USTs on the site had failed precision tightness tests. After the tanks had been drained, four of them were removed on June 1 and 6, 1989. The removal work was inspected by DEM representatives who observed that all four tanks had holes ranging in diameter from pencil-size to dime-size, that contaminated soil was present in the area from which the tanks had been excavated, and that free product was seen in the picturesquely described tank grave, which was subsequently removed. Approximately 125 cubic yards of contaminated soil was excavated and stockpiled on the site.
Service Station Maintenance Corporation (hereinafter simply "SSM"), retained as a consultant by the plaintiff prepared and submitted a site assessment report to DEM on August 29, 1989. Around May or June 1990 a soil treatment system was constructed, but DEM did not receive required progress reports or copies of analytical data pertaining to the quality of the soil. There is no real dispute in this appeal regarding the findings and orders of DEM regarding soil remediation.
Concerning the problem of groundwater pollution, the hearing officer made some further findings of fact. The direction of groundwater flow was generally west to east across the site, and east to southeast away from the site. Precision testing of USTs on nearby UST facilities showed that all such tanks were tight.
On January 3, 1990 the plaintiff sold the site to third parties, who are not involved in this appeal. Thereafter, on March 27, 1990 DEM issued the compliance order, which has been treated as a notice of violation and which was the basis for the administrative hearing. The original order was based on the site assessment report from SSM received by DEM on August 29, 1989, which concluded that its "field investigation revealed contamination of groundwater on the site." It went on to state: "The summary of Field and Analytical soil and ground water data indicates the presence of elevated levels of gasoline related compounds originating from the tank field area."
DEM retained EA Engineering, Science and Technology, Inc. (hereinafter "EA") to conduct additional subsurface investigation at the site late in 1990. EA supervised the installation of six off-site groundwater testing wells in September 1990 in addition to the five monitoring wells already on the site. Samples from nine of the eleven wells were tested on October 23, 1990 and on February 8, 1991. The validity and reliability of those tests and the accuracy of the results of that testing were the subject of dispute at the hearings.
The hearing officer exhaustively reviewed the testimony and exhibits regarding the 1990 and 1991 sampling and testing. In her analysis she noted DEM's claim that the remedies applied in 1989 were not sufficient to eliminate the groundwater pollution observed at that time and that, because of further groundwater contamination, additional monitoring, testing and remediation was required. Under those circumstances the October 1990 and February 1991 samplings and tests became relevant. She found that inconsistencies between the testimony of the DEM representatives who drew the samples so flawed the evidence of those test results that she obviously gave them no weight in her decision. She further found that discrepancies in the recordkeeping regarding the 1991 tests raised sufficient doubt as to the reliability and integrity of specific samples "that all have fallen under a cloud." The consequence of the hearing officer's decision not to give any weight to the evidence of test results was her rejection of expert opinion based on those results. This analysis fully explains the hearing officer's conclusion of law number 11:
 "The division has failed to prove through a preponderance of the evidence that despite pumping out the free product and removal of thirteen (13) feet of soil around the tank graves, Respondent caused a discharge of pollutants into the groundwater of this State."
Although the hearing officer has designated this conclusion as one of law, it is, as are most findings of causation, clearly a finding of fact. The finding is based on a failure of sufficient proof to satisfy a legally established burden, which is always part of the fact-finding process, not part of the application of substantive legal rules to the presence or absence of predicate facts.
On review, the Director accepted all of the hearing officer's findings and conclusions, except conclusion of law number 11. She decided that the hearing officer's conclusion of a failure of adequate proof of causation was inconsistent with the facts, as found, especially finding of fact number 21:
 "Groundwater monitoring samples, including those containing sediment, indicate the presence of hydrocarbons in the monitoring wells."
The Director pointed out that the hearing officer, in analyzing the evidence presented, observed that there was no other source of pollution, which was shown to be the cause of the contamination present in the test samples. She concluded that, given the undisputable evidence of groundwater pollution at the time of the excavation of the leaking tanks and immediately thereafter, and the finding of the presence of some contamination in some of the monitoring wells as late as February 1991, and with no other adequately demonstrated source of the continuing presence of pollutants, "the only logical conclusion based on the record is that the tank area is the source area."
The plaintiff's claim that its transfer of title on January 3, 1990 relieved it from liability for the consequences of the discharges of pollutants prior to that date lacks any merit and will not be further considered. See Resource Conservation andRecovery Act § 601(a), 42 U.S.C. § 6991b(h)(6)(c)(i) (1988).
The plaintiff urges that this Court give weight to its evidence that there is some other source for the pollution found in 1990 and 1991 than its leaking tanks which were removed in 1989. That is precisely what the Court is expressly forbidden to do both by the statute which establishes its jurisdiction and by the well-understood legal principle declared by the Supreme Court. This Court is forbidden from substituting its judgment as to the weight of the evidence for that of the administrative agency on questions of fact. § 42-35-15(g); EnvironmentalScientific Corporation v. Durfee, 621 A.2d 200 (R.I. 1993).
Alternatively, the plaintiff argues that the Director's decision is not supported by any evidence in the record. The plaintiff is clearly mistaken. It is obvious that pollutants were discharged to the groundwater at the site when and before the tanks and the polluted soil were removed in 1989. It is equally clear that as of the most recent tests in 1991 before the hearing there was petroleum-based pollution in the groundwater. Whether or not there were any intervening sources of the pollution, although both the hearing officer and the Director found none had been proved, it is still a reasonable inference that the source of the 1991 pollution was the discharge from the plaintiff's leaking underground storage tanks before they were removed in 1989.
Finally, although not argued directly, the plaintiff suggests that the Director did not accord the hearing officer's decision on an issue of fact the deference to which it is entitled underEnvironmental Scientific Corporation v. Durfee, supra, decided fully five months before the final agency decision overruling the hearing officer. The Director must give great deference to the hearing officer's findings and conclusions. As to the only important finding and conclusion in this case the Director gave no deference whatever, let alone great deference, to the hearing officer's decision. Only if the hearing officer is clearly wrong may the Director refuse to accord the great deference otherwise due. Put another way, the hearing officer is presumed to be correct. Furthermore, the reason for the Director's disagreement "must be substantiated by more than mere philosophical differences with the hearing officer." Id., at 209. This Court cannot say that the hearing officer's conclusion was clearly wrong.
Search the Director's final agency decision as the Court might, it does not demonstrate that the hearing officer was clearly wrong. At best, it simply demonstrates a reasonable disagreement between the initial fact-finder and the agency reviewer. If Environmental Scientific Corporation means anything, it must be that a mere reasonable disagreement will not be permitted to overturn a carefully considered, equally reasonable conclusion of a hearing officer.
For the reasons above stated the final agency decision of August 13, 1993 is vacated and set aside. The decision and order of hearing officer dated July 7, 1993 will be reinstated as the final decision and order of the Department of Environmental Management.
The plaintiff will present a form of judgment for entry on notice to the defendant.